## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**RONALD F. COONEN and**
**THOMAS MOQUINO, JR.**,

    Plaintiffs,

  vs.          No. **CIV-04-1035 MCA/ACT**

**SANDIA CORPORATION,**
**a Delaware Corporation,**

    Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Sandia Corporation's *Motion to Dismiss Claims of Thomas Moquino* [Doc. 8], filed November 18, 2004.  Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court grants the motion.

### I. BACKGROUND

On September 14, 2004, Plaintiffs Ronald F. Coonen and Thomas Moquino, Jr. commenced an action to enforce rights and clarify rights to future benefits under the Sandia Corporation Retirement Income Plan ("the Retirement Income Plan") and the Sandia Corporation Pension Security Plan[1] ("the Pension Security Plan").  The *Complaint* was filed pursuant to the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B) and (e).  [Doc. 1 at 1].  Coonen is a participant in the Retirement Income

---

[1] Both plans are employee retirement benefit plans subject to all requirements of ERISA. Sandia is the plan administrator, sponsor, and named fiduciary of both plans.  [Doc. 1 at 2].

Plan.  He began his employment with Defendant Sandia Corporation ("Sandia") in 1975 as a Recurrent Security Inspector.  He worked in that capacity until 1976, when he became a Security Inspector.  [Id. at 1-2].  In his year as a Recurrent Security Inspector, Coonen worked approximately 1,968 hours, which was equivalent to the number of hours worked by Sandia's regular Security Inspectors.  Coonen is not a member of a recognized bargaining unit.  [Id.].

Moquino is a member of a recognized bargaining unit and is a participant in the Pension Security Plan.  Like Coonen, Moquino also began work with Sandia as a Recurrent Security Inspector.  He held that position from 1982 until 1984, at which time he became a Security Inspector.  Moquino worked more than 1,000 hours each year he was employed as a Recurrent Security Inspector, which was equivalent to the number of hours worked by Sandia's regular Security Inspectors.  [Doc. 1 at 2-3].

While employed as Recurrent Security Inspectors, Coonen and Moquino worked regular, published weekly schedules and were held to the same requirements and training as Sandia's regular Security Inspectors.  While employed as Recurrent Security Inspectors, Coonen and Moquino were scheduled to continue working 20 hours or more a week for an indefinite period of time.  [Doc. 1 at 4].  Both the Retirement Income Plan and the Pension Security Plan provide, in pertinent part, that (1) "net credited pension service" is used to calculate a participant's pension benefit; (2) "net credited pension service" is determined by a participant's "term of employment;" (3) "term of employment" is defined, in part, as "years of employment as a regular employee at Sandia;" and (4) a "regular employee" is a "full-time

2

or part-time Sandia employee scheduled to continue working 20 or more hours a week for an indefinite period of time." [Id. at 3-4].

Coonen has applied to have his hours as a Recurrent Security Inspector credited toward his net credited pension for the purpose of calculating his future pension benefits. His application, however, was denied. Coonen has exhausted his administrative remedies through the Employee Benefits Committee ("EBC") and the Employee Benefits Claim Review Committee ("EBCRC"). [Doc. 1 at 4]. Moquino has not applied to have his hours as a Recurrent Security Inspector credited toward his net credited pension for the purpose of calculating his future pension benefits because he believes that any such application would be futile and meaningless in light of Sandia's final decision on Coonen's application. [Id. at 5]. By their *Complaint*, Coonen and Moquino seek, among other things, an order clarifying, declaring, and enforcing their right to have their hours worked as Recurrent Security Inspectors credited toward net credited service for purposes of calculating their future pension benefits. [*Id.* at 5].

Sandia now moves to dismiss Moquino's claims on the ground that Moquino has failed to exhaust his administrative remedies. As an initial matter, Sandia stresses the following differences between Moquino's situation and that of Coonen: (1) Coonen and Moquino are covered under two different plans; (2) Coonen has exhausted his administrative remedies through appeal to the EBC and the EBCRC, while Moquino has not applied to have his hours worked as a Recurrent Security Inspector credited toward his net credited service; (3) unlike Coonen, Moquino is part of a bargaining unit represented by a union; and

3

(4) Coonen is currently eligible for retirement, while Moquino is still years away from eligibility.  [Doc. 8; Doc. 9 at 1-3].  Sandia urges the Court to reject Moquino's futility argument on the ground that Moquino has not shown the existence of any of the factors typically considered in determining whether exhaustion of administrative remedies should be excused on the basis of futility.  Finally, Sandia submits that consideration of Moquino's claims at this juncture would procedurally complicate this lawsuit because there currently is no administrative record for the Court to review.  [Doc. 9 at 3-10].

In response, Moquino maintains that he has demonstrated clearly and positively that exhausting his administrative remedies would be futile, and that Sandia has admitted as much through statements of its Acting Vice President of Human Resources, Larry R. Clevenger. [Doc. 11 at 2-5].  The statements to which Moquino refers are included in a letter of August 3, 2004 from Clevenger to Steven Rivera, President of Security Police Association, Local 7002.  [Id., Exh. 1].  The reference line of the letter reads "Your letter dated June 28, 2004 to Paul Robinson reference NRRSI's years of service[.]"  [Id.].  The letter begins by stating that "Paul Robinson has asked that I respond to you regarding the Pension Security Plan (PSP) and the question you raise about service credit for time spent as non-regular employees."  The letter continues, in relevant part:

> The specific issue you raise has been discussed with your union over the years in various forms, both in collective bargaining negotiations and in ad hoc meetings.  Most recently, another employee, not in your union, brought this issue to the attention of the Employee Benefits Committee and the Employee Benefits Claim Review Committee (EBCRC), prompting Sandia to seek an independent legal opinion from outside counsel.  Based on

4

> this opinion the EBCRC rejected this employee's claim.
>
> You also raised the issue of equability and fairness, as well as the prospect of bringing this issue to some other venue such as mediation or Federal Court. You have the prerogative to pursue either of these options.

[Id.].

Moquino contends that the other employee referred to in the letter is Coonen. Thus, according to Moquino, "Mr. Clevenger's letter to Mr. Rivera clearly and positively demonstrates that, after seeking outside legal counsel, Defendant has reached its final decision with regard to the issue of service credit for time spent by non-regular employees." [Doc. 11 at 3]. Moquino also maintains that Clevenger's letter constitutes an admission that the service-credit issue will be treated identically for both union and non-union employees and that Sandia's "urging" Rivera to pursue federal-court litigation "only underscores the futility of any individual union member's exhaustion of administrative remedies as to this issue." [Id. at 3-4]. Finally, because Sandia has attached to its motion materials outside the *Complaint*, Moquino asks the Court to treat Sandia's motion to dismiss as a motion for summary judgment pursuant to Fed.R.Civ.P. 56. [Id. at 1].

## II. ANALYSIS

### A. Motion to Dismiss v. Motion for Summary Judgment

Sandia has not specified the enumerated subsection of Rule 12(b) pursuant to which it seeks dismissal of Moquino's claims. [See generally Doc. 8]. The Court concludes, however, that the most applicable subsections and, really, the only likely candidates under

5

the circumstances, are (b)(1), which provides for the dismissal of claims for lack of subject-matter jurisdiction, and (b)(6), which provides for dismissal for failure to state a claim upon which relief may be granted.  See Fed.R.Civ.P. 12(b)(1), (b)(6).[2]  Consideration and analysis of Sandia's motion under the proper subsection is important for a number of reasons.

In moving to dismiss a complaint for lack of subject-matter jurisdiction under Fed.R.Civ.P.12(b)(1), a defendant "may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction is based."  Stuart v. Colo. Interstate Gas Co., 271 F.3d 1221, 1225 (10th Cir. 2001).  In reviewing such a motion, this Court has "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts."  Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995).  In this context, the Court's "reference to evidence outside the pleadings does not convert the [Rule 12(b)(1)] motion into a Rule 56 motion."  Stuart, 271 F.3d at 1225.  Unless it is shown that no re-drafting of the pleadings could cure the jurisdictional defect, a dismissal for lack of subject-matter jurisdiction generally is not a decision on the merits and, therefore, constitutes a dismissal without prejudice.  See Fed.R.Civ.P. 41(b); Leaf v. Supreme Ct. of Wis., 979 F.2d 589, 595 (7th Cir. 1992).

On the other hand, dismissal pursuant to Rule 12(b)(6) normally operates as a judgment on the merits.  Consequently, a Rule 12(b)(6) dismissal ordinarily is a dismissal

---

[2]  Dismissal also may result from lack of jurisdiction over the person, improper venue, insufficiency of process, insufficiency of service of process, or failure to join a party under Rule 19.  See Fed.R.Civ.P. 12(b)(2)-(5), (7).

with prejudice.  <u>Steele v. Fed. Bureau of Prisons</u>, 355 F.3d 1204, 1212 (10th Cir. 2003).

Additionally,

> [i]f, on a motion asserting the defense numbered (6) to dismiss
> for failure of the pleading to state a claim upon which relief can
> be granted, matters outside the pleading are presented to and not
> excluded by the court, the motion shall be treated as one for
> summary judgment and disposed of as provided in Rule 56 . . . .

Fed.R.Civ.P. 12(b).  By contrast, "because 'the defenses enumerated in Rule 12(b)(1) . . .

generally are not proper subjects for motions for summary judgment,' Rule 12(b) does not

authorize conversion whenever matters outside the pleadings are accepted by the court."

<u>Nichols v. United States</u>, 796 F.2d 361, 366 (10th Cir. 1986)(*quoting* 5 WRIGHT & MILLER,

FEDERAL PRACTICE AND PROCEDURE § 1366 (Supp.1986)).

Again, Sandia has not specified the enumerated subsection of Rule 12(b) pursuant to

which it seeks dismissal of Moquino's claims.  [<u>See generally</u> Doc. 8].  Sandia does,

however, ask the Court to "require Moquino to exhaust his administrative remedies *before*

*filing suit in this Court.*"  [Doc. 9 at 1 (emphasis added)].  It thus does not appear that Sandia

takes the position that Moquino can assert no set of facts that would entitle him to relief.  To

the contrary, Sandia's argument is that Moquino should first be made to pursue these claims

through the administrative process and that his seeking relief in this Court is premature.  [<u>Id.</u>

at 3, 10].  Because the Court construes Sandia's motion as a motion to dismiss for lack of

subject-matter jurisdiction, it will be considered as a motion to dismiss and not as a motion

for summary judgment.  <u>See</u> <u>First Atlantic Leasing Corp. v. Tracey</u>, 738 F.Supp. 863, 875-

876 (D.N.J. 1990) (in ERISA action, party's failure t o comply with terms of plan and make

written request for information concerning pension benefits before bringing suit in federal court rendered suit premature and, as a result, district court lacked subject-matter jurisdiction); see also Steele, 355 F.3d at 1213 (in action brought pursuant to Prison Litigation Reform Act, explaining that dismissal based on lack of exhaustion should normally be without prejudice, since failure to exhaust administrative remedies is often a temporary, curable, procedural flaw).

### B. ERISA, Exhaustion of Administrative Remedies, and Futility

Section 1132 of ERISA provides, in pertinent part, that "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ."  29 U.S.C. § 1132(a)(1)(B).  While ERISA contains no explicit exhaustion requirement, the Tenth Circuit has held that "'exhaustion of administrative (i.e., company or plan-provided) remedies is an implicit prerequisite to seeking judicial relief.'"  Whitehead v. Oklahoma Gas & Elec. Co., 187 F.3d 1184, 1190 (10th Cir. 1999) (quoting Held v. Mfrs. Hanover Leasing Corp., 912 F.2d 1197, 1206 (10th Cir.1990)).  That exhaustion should be such a prerequisite "derives from the exhaustion doctrine permeating all judicial review of administrative agency action . . . ."  McGraw v. Prudential Ins. Co. of Am., 137 F.3d 1253, 1263 (10th Cir. 1998) (citing Communications Workers of Am. v. AT & T, 40 F.3d 426, 432 (D.C.Cir.1994)).  Because ERISA's exhaustion requirement is not statutory but is, rather, a judicial creation, courts will sometimes excuse it when, for example, it has been demonstrated that resort to administrative

8

remedies would be futile.  Id.  The burden on a party seeking to escape exhaustion on this ground is a heavy one, as that party is charged with making a "clear and positive" showing of futility.  See Fizer v. Safeway Stores, Inc., 586 F.2d 182, 183 (10th Cir. 1978) (*quoting* Imel v. Zohn Mfg. Co., 481 F.2d 181, 184, (10th Cir. 1973), *cert. denied*, 415 U.S. 915 (1974)).  Moreover, the futility exception "is limited to those instances where resort to administrative remedies would be 'clearly useless . . . .'"  McGraw, 137 F.3d 1264 (*quoting* Communications Workers, 40 F.3d at 432.

In Communications Workers, the district court excused the plaintiffs' failure to exhaust administrative remedies on the ground that exhaustion would have been futile in light of plan administrators' denial of other employees' applications for benefits.  Communications Workers, 40 F.3d at 429-430.  None of those employees filed an administrative appeal of the denial.  Id. at 430.  Plaintiffs (the collective bargaining representative Communications Workers of America ("CWA") and Lyle Wingate, an affected employee) subsequently brought suit for violations of ERISA and the Labor Management Relations Act.  Id. at 428-429.  Wingate was not among the employees to have applied for benefits.  Reversing the decision of the district court, the appellate court held that excusing CWA and Wingate from exhausting administrative remedies was error where (1) none of the denied employees had brought an administrative appeal and, therefore, the Benefits Committee was never allowed the opportunity to render a final determination as to the propriety of the denial; (2) Wingate had not even filed an initial application for benefits; and (3) other than the denial of the applying employees, there was nothing in the record

demonstrating that exhaustion by CWA and Wingate would have been futile.  Id. at 432-433.

The court further reasoned that

> [e]ven if one were to concede that an unfavorable decision from
> the Benefits Committee was *highly likely*, that does not satisfy
> our strict futility standard requiring a *certainty* of an adverse
> decision. Simply put, the denial of initial claims, which is all the
> record reveals, is not enough to show futility of internal Plan
> remedies.

Id. at 433 (emphasis in original).

The decision to excuse exhaustion on the ground of futility depends on a number of factors, including (1) whether the plaintiff diligently pursued administrative relief; (2) whether the plaintiff acted reasonably in seeking immediate judicial review under the circumstances; (3) the existence of a fixed policy denying benefits; (4) the failure of the plan to comply with its own internal administrative procedures; and (5) testimony of plan administrators that any administrative appeal would be futile.  These factors are not necessarily weighed equally.  Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, 250 (3rd Cir. 2002).

In the instant case, the Court concludes that Moquino has not demonstrated that any of the above factors weigh in favor of excusing exhaustion of administrative remedies on the basis of futility.  First, Moquino concedes that he has not pursued administrative relief, acknowledging that he "has not applied to have his hours worked as a Recurrent Inspector credited toward his net credited service for purposes of calculating his pension benefit." [Doc. 1 at 5, ¶ 22].  Next, Moquino does not appear to allege that Sandia has failed to

comply with its own internal administrative procedures.  Rather, his argument is that, in light of Sandia's final decision on Coonen's application through the EBCRC and Sandia's "persistent failure and refusal to reconsider" that decision, any application by Moquino would be futile.  [Id.].  Thus, Moquino seems to acknowledge Sandia's compliance with its internal administrative procedures, at least in Coonen's case.

Moquino also cites Larry Clevenger's August 3, 2004 letter to Steven Rivera as an admission by Sandia—as well as clear and positive proof—that any exhaustion of administrative remedies would be futile because Coonen's application has been denied.  [See Doc. 11, Exh. 1].  This Court is not persuaded that the letter satisfies the strict standard that must be met before compliance with the exhaustion requirement will be excused.  See Fizer, 586 F.2d at 183.  First, despite Moquino's assertion that the letter confirms that Coonen was denied the benefits for which he applied, the letter does not refer to Coonen by name but, instead, to "another employee, not in [Rivera's] union, [who] brought this issue to the attention of the [EBC] and the [EBCRC] . . . ."  Id.  Even assuming that Coonen is the employee to whom Clevenger is alluding, Coonen and Moquino, as discussed above, are not in the same situation with respect to their pension benefits.  Coonen is not a union member, whereas Moquino is a union member.  Coonen is now eligible to receive pension benefits, while Moquino is years away from eligibility.  Additionally, Coonen and Moquino are covered by two different pension plans.  [See Doc. 14 at 2].

The Court's determination that Moquino may not avoid exhaustion finds support in other cases.  In Berger v. Edgewater Steel Co., 911 F.2d 911(3rd Cir. 1990), the Third

11

Circuit affirmed the district court's conclusion that three employees who were eligible for, and orally requested, what was known as 70/80 retirement had established the futility of pursuing their administrative remedies where the evidence showed that (1) denial of the 70/80 benefits was fixed policy[3]; (2) employer and plan administrator Edgewater Steel failed to comply with the pension plan's administrative procedures requiring it to give notice or specific reasons for the denial of 70/80 retirement; and (3) under the circumstances, the three employees acted reasonably in seeking immediate judicial review.  Id. at 917.

On the other hand, both the district and appellate courts determined that the futility exception was not properly invoked by a fourth retiring employee who argued that it would have been equally futile for him to seek administrative relief because Edgewater's policy of denying requests for 70/80 retirement was fixed and, in that employee's own words, "no matter how hard he tried to attain [70/80 retirement], [he] would have been unsuccessful." Berger, 911 F.2d at 917.  The Third Circuit agreed with the district court's conclusion that this argument lacked merit because the fourth employee admittedly had never even asked for 70/80 retirement.  Id.

The result was similar in Metz v. United Counties Bancorp, 61 F.Supp.2d 364 (D.N.J. 1999).  The 80 plaintiffs in Metz were all employees of United Counties Bankcorporation, which ceased to exist after 2 quick mergers, the first with Meridian Bancorp Inc., the second with CoreStates Financial.  While there was executed a United Counties-Meridian merger

---

[3]  The district court found that Edgewater Steel Executive Vice President and CEO George Kurzmark told the three retiring employees that no 70/80 retirements would be approved because "[t]he company cost structure wouldn't stand it."  Berger, 911 F.2d at 915.

agreement and a CoreStates-Meridian merger agreement, the benefits under the latter were more generous than those guaranteed under the former. <u>Metz</u>, 61 F.Supp.2d at 368-369. Following the mergers, CoreStates was the surviving entity. When plaintiffs, who had become CoreStates employees, were terminated by CoreStates, they brought suit pursuant to, *inter alia*, ERISA, alleging, among other things, that they were entitled to, but denied, the enhanced benefits detailed in CoreStates's "Partnership Guarantee Contract." <u>Id.</u> at 369.

Concluding that plaintiffs' failure to exhaust administrative remedies was not excused on the ground of futility, the court first noted that it was undisputed that not one plaintiff had filed an application for enhanced benefits. <u>Metz</u>, 61 F.Supp.2d at 383-384. The court then rejected the contention that a Q&A fax sheet[4] that plaintiffs received contemporaneously with their letters of termination evidenced CoreStates's fixed policy of denying enhanced benefits and served to put recipients on notice that the pursuit of administrative remedies would have been in vain. <u>Id.</u> at 384. The court distinguished the situation of the <u>Metz</u> plaintiffs from that of the three <u>Berger</u> employees for whom exhaustion was excused, explaining that the <u>Berger</u> plaintiffs had been told that (1) as of a certain date, 70/80 retirement would be eliminated, and (2) they would not receive those benefits. <u>Id.</u> (*citing*

---

[4] The termination letters contained a "severance schedule," in which severance benefits were calculated according to the United Counties-Meridian severance agreement. There was a question in the Q&A that asked "Why am I not eligible for 'Partnership Severance?'" The answer was "[t]he severance scheduled for United Counties employees is outlined in the merger agreement between Meridian and United Counties Trust Company signed [M]ay 23, 1995. Corestates is honoring that agreement." <u>Metz</u>, 61 F.Supp.2d at 384. These were the documents on which plaintiffs relied in support of their argument that exhaustion of administrative remedies would have been futile.

Berger, 911 F.2d at 914-915).  Specifically noting that the fourth Berger plaintiff was barred from bringing an ERISA action because he had never asked for 70/80 retirement, the Metz court agreed with the reasoning of the Berger court and held that the letters of termination and the Q&A fax sheets did not excuse the Metz plaintiffs' failure to exhaust internal administrative remedies.  The Metz plaintiffs' ERISA claim was dismissed without prejudice. Id.

This Court is persuaded by the reasoning of both Berger and Metz.  Here, the letter from Larry Clevenger to Steven Rivera explaining that Sandia, on the basis of an independent legal opinion from outside counsel, had already denied the application of "another employee" seeking pension credit for hours spent as a non-regular employee, simply is not sufficient to demonstrate clearly and positively that Moquino's exhaustion of administrative remedies would be an exercise in futility.  See Fizer, 586 F.2d at 183.  Even assuming that the employee referred to in Clevenger's letter is Coonen, significant differences exist in the situations of Coonen and Moquino and their respective pension plans. Moreover, the fact that Coonen's application was denied does not necessarily render it a foregone conclusion that an application by Moquino also would be denied.  See Communications Workers, 40 F.3d at 433 ("Even if one were to concede that an unfavorable decision from the Benefits Committee was *highly likely*, that does not satisfy our strict futility standard requiring a *certainty* of an adverse decision.") (emphasis in original).  This Court concludes that Moquino has not satisfied his heavy burden of demonstrating that the pursuit of administrative remedies would be futile.  See Fizer, 586 F.2d at 183.  Accordingly,

14

Moquino's claims will be dismissed without prejudice.

## III. CONCLUSION

Although ERISA contains no explicit exhaustion requirement, the Tenth Circuit normally requires that a claimant pursue administrative remedies before seeking judicial relief. See Whitehead, 187 F.3d at 1190. Exhaustion may be excused where it is shown that it would be nothing more than an exercise in futility; however, a party bears a heavy burden of demonstrating futility clearly and positively. See Fizer, 586 F.2d at 183. In the instant case, the Court concludes that Thomas Moquino Jr., who admittedly has not exhausted his administrative remedies, has not met that burden. For that reason, Sandia's *Motion to Dismiss Claims of Thomas Moquino* is granted and Moquino's claims are dismissed without prejudice.

**IT IS, THEREFORE, ORDERED** that Sandia's *Motion to Dismiss Claims of Thomas Moquino* is GRANTED.

**SO ORDERED** this 30th day of August, 2005, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
United States District Judge

15